**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
| | : **CRIMINAL ACTION NO. 05-363-6** |
| v. | : |
| | : **CIVIL ACTION NO. 10-986** |
| DAVID CALHOUN, | : |
| Defendant. | : |
| | : |

**<u>MEMORANDUM OPINION</u>**

RUFE, J.                                                                     **June 28, 2012**

Before the Court is Defendant David Calhoun's *pro se* Motion for a New Trial Pursuant

to Federal Rule of Criminal Procedure 33.[1]  For the reasons that follow, the Court finds that the

grounds pursuant to which Defendant brings his Motion for a New Trial lack merit, and will deny

the Motion without an evidentiary hearing.[2]  Also before the Court is Defendant's Motion to

Vacate, Set Aside, or Correct his Sentence Pursuant to 28 U.S.C. § 2255.[3]  While the Court finds

that most of the grounds raised in the § 2255 Motion lack merit, one of the issues raised in the

Motion requires a hearing.  Accordingly, the Court makes findings herein with respect to the §

2255 Motion, but will delay ruling on the entirety of the Motion until after the hearing.

---

[1]  Doc. No. 403.

[2]  There is no basis for holding an evidentiary hearing with respect to Defendant's Rule 33 Motion, since,
for the reasons discussed below, the asserted newly discovered <u>Brady</u> evidence is not exculpatory.  <u>United States v.
Johnson</u>, 405 F. App'x 637, 640 (3d Cir. 2010).  Consequently, the Court will deny the Rule 33 Motion without an
evidentiary hearing.  <u>See</u> <u>United States v. Jackson</u>, 427 F. App'x 109, 113 (3d Cir. 2011) (holding that a district
court is not required to hold an evidentiary hearing before ruling on a motion for a new trial).

[3]  Doc. No. 439.

## I. FACTUAL BACKGROUND

On June 29, 2005, a grand jury in the Eastern District of Pennsylvania returned a nineteen-count indictment against Calhoun and seven co-defendants.[4]   Calhoun was charged with conspiracy to distribute more than five kilograms of cocaine, in violation of 21 U.S.C. § 846 (Count One); and possession with intent to distribute more than 500 grams of cocaine, in violation of 21 U.S.C. § 841(a)(1) (Count Thirteen).   Six co-defendants (Raul Estevez,[5] Ibel Blanch, Ricardo Cruz, Leopoldo Morell-Estevez, David Gutierrez, and Robert Garcia) pled guilty.   Calhoun and co-defendant Pedro Risquet proceeded to trial, which began on April 17, 2006 before the Honorable Marvin Katz.[6]

At trial, the Government presented evidence of a conspiracy among Calhoun and his co-defendants.   The evidence at trial focused primarily on the role of Calhoun and co-defendant Risquet in the conspiracy.[7]   Co-defendant Raul Estevez was the Government's key witness. Estevez testified that from July 2004 to February 2005, Risquet acted as Estevez's main cocaine supplier, selling about a kilogram of cocaine to Estevez once a month.[8]   Estevez twice purchased cocaine from co-defendant Ricardo Cruz.[9]   Estevez serviced two customers: an individual,

---

[4]   Indictment, Doc. No. 1.

[5]   Raul Estevez is identified as "Raul Esteve, a/k/a 'Raul Estevez'" in the Indictment.   The Court will refer to him as "Estevez" throughout.

[6]   The case was reassigned to this Court on July 31, 2008.   This Court has reviewed carefully the record and the trial transcripts.

[7]   The Court's discussion of the conspiracy focuses on the actions of Defendant and his involvement in the conspiracy.

[8]   See, e.g., Trial Transcript 4/18/06, Day 2 ("Trial Tr. Day 2") at 17:7-19.

[9]   Trial Tr. Day 2 at 20:4-25.

2

identified in the Indictment as "Person #1," and Calhoun.[10]

The mechanics of the conspiracy were straightforward.  Estevez would receive phone calls from Calhoun when Calhoun wished to purchase cocaine.  Estevez would then call Risquet and arrange for transport of the cocaine from Risquet to Estevez.  Estevez would purchase the cocaine from Risquet, typically for approximately $25,000 per kilogram, and then resell it to Calhoun for a profit.  To establish the mechanics of Calhoun's role in the conspiracy, the Government presented telephone conversations between Risquet and Estevez, and between Estevez and Calhoun, recorded between December 11, 2004, and February 3, 2005.[11]

In one such conversation, recorded on December 11, 2004, Estevez informed Risquet in coded language that he had "one" at his house and that "Blanco" would be coming later to get it.[12]  Two days later, on December 13, 2004, police observed Calhoun arrive at Estevez's residence, 260 Ruscomb Street in Philadelphia ("Ruscomb").[13]

On December 31, 2004, Estevez had a similarly coded conversation, this time with Calhoun.  Calhoun asked when "is the next time you[r] buddy is going to be available"?[14] Estevez responded, "What, what the other thing, the white one? . . . let me call him to see what time he's coming to be down here."[15]  Calhoun told Estevez that he didn't "need it tonight, but

---

[10]  Trial Tr. Day 2 at 17:22-25.

[11]  See, e.g., Trial Tr. Day 2 at 93:1-15.

[12]  Trial Tr. Day 2 at 92:13-93:15; Gov't Ex. 2; Gov't Supp. App. 357-58.

[13]  Trial Transcript 4/17/06, Day 1 ("Trial Tr. Day 1") at 41:16-43:9.

[14]  Trial Tr. Day 2 at 93:16-94:4; Gov't Ex. 2; Gov't Supp. App. 359.

[15]  Trial Tr. Day 2 at 93:16-94:4; Gov't Ex. 2; Gov't Supp. App. 359.

[was] just wondering . . . if he's going to be available this weekend."[16]  Estevez responded that he would try to get it tomorrow.[17]  Estevez testified that "the white one" referred to cocaine.[18]

The next day, January 1, 2005, Estevez called Calhoun to tell him "that guy" would be available the following day.[19]  On January 2, 2005, after receiving a phone call from Risquet informing him that he would be arriving at Ruscomb in an hour-and-a-half, Estevez called Calhoun to tell him that the "boy from New York," would be on his way shortly.[20]  After a series of phone conversations, Estevez, Risquet, and Calhoun agreed to meet at 6:00 that evening.[21]  Surveillance was established at Ruscomb as a result of these conversations.[22]

At about 5:44 p.m., Risquet arrived at Ruscomb and entered the residence; he exited moments later, walked to the rear door of his car, appeared to retrieve something which he hid in his jacket, and went back inside.[23]  Several minutes later, at about 6:05 p.m., Risquet left Ruscomb.[24]  At 6:39 p.m., a police officer observed Calhoun arrive at Ruscomb.[25]  About a

---

[16]  Trial Tr. Day 2 at 93:16-94:4; Gov't Ex. 2; Gov't Supp. App. 359.

[17]  Trial Tr. Day 2 at 93:16-94:4; Gov't Ex. 2; Gov't Supp. App. 359.

[18]  Trial Tr. Day 2 at 93:21-23.

[19]  Trial Tr. Day 2 at 94:5-16; Gov't Ex. 2; Gov't Supp. App. 363.

[20]  Trial Tr. Day 2 at 94:17-23; Gov't Ex. 2; Gov't Supp. App. 364.

[21]  Gov't Supp. App. 373-76.

[22]  Trial Tr. Day 1 at 45.

[23]  Trial Tr. Day 2 at 55:20-58:11.

[24]  Trial Tr. Day 2 at 58:12-18.

[25]  Trial Tr. Day 2 at 59:2-8.

minute later, Risquet returned to Ruscomb.[26]  The two men waved to each other and entered the

residence, Calhoun first, followed by Risquet.[27]  Moments later Estevez arrived and entered the

building carrying what appeared to the officer to be a trash bag.[28]

      At about 6:50 p.m., Risquet walked out of the building and went to the driver's side door

of his car.[29]  The observing officer was unable to see what Risquet was doing while in his car, but

saw him exit the car moments later and re-enter Ruscomb.[30]  Risquet emerged about two minutes

later, placed something in the trunk of his car, and drove away.[31]

      At 7:05 p.m., the officer observed Calhoun leave Ruscomb looking as if "he became

pregnant;" from this observation the officer deduced he was carrying something beneath his

jacket.[32]  Calhoun got in his car and drove away.[33]  Calhoun was seen by another officer about 20

minutes later near his residence, 2426 Dicks Avenue in Philadelphia ("2426 Dicks Avenue").[34]

As he was approached by police officers, Calhoun dropped the bag he was carrying, which

---

[26]  Trial Tr. Day 2 at 59:12-15.

[27]  Trial Tr. Day 2 at 59:12-15.

[28]  Trial Tr. Day 2 at 59:16-18.

[29]  Trial Tr. Day 2 at 60:13-15.

[30]  Trial Tr. Day 2 at 60:15-16.

[31]  Trial Tr. Day 2 at 60:16-61:2.

[32]  Trial Tr. Day 2 at 60:18-24.

[33]  Trial Tr. Day 2 at 60:24-25.

[34]  Trial Tr. Day 1 at 46.

contained approximately one kilogram of cocaine.[35]  Although officers had a warrant to search

Calhoun's Dicks Avenue residence, Calhoun also consented to the search.[36]  Officers found,

among other items in the house, additional cocaine and $203,000 in cash.[37]

In an effort to cooperate with the Drug Enforcement Administration ("DEA"), Calhoun

provided a statement in which he identified Estevez as his cocaine supplier and admitted that

Estevez had sold him the kilogram of cocaine found in his bag on January 2, 2005.[38]  He

admitted to purchasing about a kilogram of cocaine from Estevez monthly since July 2004.[39]  He

further stated that he owed Estevez $1,300.[40]  Using this information, the DEA arranged for

Calhoun to meet with Estevez to settle this debt, giving Calhoun $1,300 and outfitting Calhoun

with a concealed recording device.[41]  After a series of phone calls between Calhoun, Estevez,

Risquet, and Person #1, who was also cooperating with the DEA, the DEA executed a search

warrant at Ruscomb and seized two kilograms of cocaine on February 3, 2005.[42]

---

[35]  Trial Tr. Day 1 at 46-48; Gov't Ex. 3.

[36]  Trial Tr. Day 2 at 33:20-21.

[37]  Trial Tr. Day 2 at 34-35.

[38]  Trial Tr. Day 1 at 48-49.

[39]  Trial Tr. Day 1 at 48-49.

[40]  Trial Tr. Day 1 at 48-49.

[41]  Trial Tr. Day 1 at 49.

[42]  Trial Transcript 4/19/06, Day 2 ("Trial Tr. Day 3") at 28-29; Supp. App. 379-400; Gov't Ex. 8.

## II. Procedural History

Calhoun was charged by Indictment on June 29, 2005.[43]  On July 28, 2005, Nino Tinari entered his appearance on Calhoun's behalf.[44]  Despite his initial attempts to cooperate and two scheduled change of plea hearings, Calhoun did not enter a guilty plea and trial was scheduled for February 6, 2006.[45]  Before trial began, however, the Court granted Tinari's motion to withdraw as counsel.[46]  On January 25, 2006, William Cannon was appointed to represent Calhoun, and the trial was rescheduled to April 17, 2006, to allow counsel time to prepare.[47]

On April 5, 2006, Calhoun filed a *pro se* motion for a continuance of the trial based on his asserted illness and inability to communicate with his attorney.[48]  The Court allowed the Government to arrange a physical examination of Calhoun, which revealed that his condition did not prevent him from communicating with counsel.[49]  Attorney Cannon did not request that the trial be continued and informed the court that he had spoken to his client on several occasions. Based on this information, Judge Katz denied the motion for a continuance.[50]  Attorney Cannon

---

[43]   Doc. No. 1.

[44]   See Doc. No. 467, Ex. A.

[45]   Doc. No. 132.

[46]   Doc. No. 151.

[47]   Doc. No. 165.

[48]   Doc. No. 214.

[49]   Doc. No. 234.

[50]   Doc. No. 236.

renewed Calhoun's request for a continuance on the day of trial; the request was again denied.[51]

Calhoun's trial commenced on April 17, 2006, and on April 20, 2006, the jury found Calhoun guilty of all counts charged.  On August 11, 2006, Calhoun was sentenced to 20 years of imprisonment,[52] followed by 10 years of supervised release, and was ordered to pay a special assessment of $200.[53]  Calhoun's timely filed August 17, 2006 appeal was denied by the Third Circuit on May 1, 2008.[54]  The Third Circuit affirmed the judgment of conviction and sentence, holding, *inter alia*, that there was sufficient evidence to establish Calhoun knew he was part of a larger operation and that the District Court had not abused its discretion in denying Calhoun's *pro se* motion to continue the trial.[55]  The Third Circuit denied Calhoun's petitioner for rehearing *en banc* on October 22, 2008.[56]  On March 9, 2009, the United States Supreme Court denied Calhoun's petition for writ of certiorari.

On April 20, 2009, Calhoun filed a *pro se* Motion for a New Trial pursuant to Federal Rule of Criminal Procedure 33, based on what he asserts is newly discovered evidence.[57]  On March 8, 2010, he filed a Motion to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C.

---

[51]  Trial Tr. Day 1 at 20-21.

[52]  Twenty years was the mandatory minimum sentence as a result of Calhoun's prior felony drug conviction.  See 21 U.S.C. § 841(b)(1)(A) ("If any person commits such a violation after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment which may not be less than 20 years.").

[53]  Doc. No. 354.

[54]  Doc. No. 389, United States v. Calhoun, 276 F. App'x 114 (3d Cir. 2008).

[55]  Id. at 116, 117.

[56]  Sur Petition for Rehearing, No. 06-3794 (3d Cir. Oct. 22, 2008).

[57]  Doc. No. 403.

§ 2255.[58]  These Motions are now before the Court.

Of relevance to the Motions before the Court are two related proceedings filed by Calhoun, which relate to what Calhoun claims was his unlawful detention between February 23, 2005, the date on which he alleges the state sentence pursuant to which he was detained expired, and April 20, 2006, when the jury returned a guilty verdict.  The first, filed by Calhoun on January 30, 2008, while his appeal was pending, was a Bivens[59] action assigned to the Honorable Ronald L. Buckwalter of this Court.[60]  Judge Buckwalter ultimately dismissed the case, finding that Calhoun had failed to allege any facts supporting his conclusion that he was improperly detained.[61]  The second related action was filed by Calhoun on May 2, 2008, in the Commonwealth Court of Pennsylvania, in which Calhoun again alleged he was improperly detained.  The case was removed to this Court on September 28, 2008, and assigned to Judge Buckwalter, who dismissed the action as barred by *res judicata*.[62]

### III. MOTION FOR A NEW TRIAL[63]

**A.      Standard of Review**

Federal Rule of Criminal Procedure 33 provides that "[u]pon the defendant's motion, the

---

[58]  Doc. No. 439.

[59]  A "Bivens action" is the federal equivalent to an action filed pursuant 42 U.S.C. § 1983, and refers to a civil rights action in which the plaintiff alleges that a defendant has violated his rights while acting under color of federal law.  See Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971).

[60]  See Calhoun v. Daub, No. 08-458 (E.D. Pa.).

[61]  Calhoun v. Mann, No. 08-458, 2008 WL 5273613 (E.D. Pa. Dec. 18, 2008); see also Calhoun v. Mann, No. 08-458, 2009 WL 839214 (E.D. Pa. Mar. 26, 2009).

[62]  Calhoun v. Murray, Civ. A. No. 08-4707, Doc. Nos. 37, 46.

[63]  The Court liberally construes Calhoun's *pro se* filings.  Higgs v. Attorney Gen. of the U.S., 655 F.3d 333, 339 (3d Cir. 2011).

court may vacate any judgment and grant a new trial if the interest of justice so requires."[64]

Motions under Rule 33 are "not favored and should be granted sparingly and only in exceptional

cases."[65]  Exceptional cases are those in which errors that occurred during trial, either

individually, or in combination, "so infected the jury's deliberations that they had a substantial

influence on the outcome of the trial."[66]

Here, Calhoun argues that he has recently discovered[67] exculpatory evidence which was

withheld in violation of <u>Brady v. Maryland</u>.[68]  In <u>Brady</u>, the Supreme Court held that "suppression

by the prosecution of evidence favorable to an accused upon request violates due process where

the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of

the prosecution."[69]  "[T]o establish a <u>Brady</u> violation requiring relief, a defendant must show that

(1) the government withheld evidence, either willfully or inadvertently; (2) the evidence was

favorable, either because it was exculpatory or of impeachment value; and (3) the withheld

---

[64]   Fed. R. Crim. P. 33(a).

[65]   <u>United States v. Silveus</u>, 542 F.3d 993, 1005 (3d Cir. 2008) (internal quotation omitted).

[66]   <u>United States v. Thornton</u>, 1 F.3d 149, 156 (3d Cir. 1993) (quoting <u>United States v. Hill</u>, 976 F.2d 132, 145 (3d Cir. 1992)).

[67]   Where, as here, a defendant's motion for a new trial is based on newly discovered evidence, a court may grant the motion where the following requirements are met:

> (a) the evidence must be in fact, newly discovered, *i.e.*, discovered since the trial; (b) facts must be alleged from which the court may infer diligence on the part of the movant; (c) the evidence relied on must not be merely cumulative or impeaching; (d) it must be material to the issues involved; and (e) it must be such, and of such nature, as that, on a new trial, the newly discovered evidence would probably produce an acquittal.

<u>United States v. Johnson</u>, 405 F. App'x 637, 640 (3d Cir. 2010) (quoting <u>United States v. Cimera</u>, 459 F.3d 452, 458 (3d Cir. 2006)).

[68]   373 U.S. 83 (1963).

[69]   <u>Id.</u> at 87.

10

evidence was material."[70]

"Evidence is material 'only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'"[71]  However, this standard "does not require demonstration by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal."[72]  The "touchstone of materiality is a 'reasonable probability' of a different result."[73]  "The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence.  A 'reasonable probability' of a different result is accordingly shown when the government's evidentiary suppression 'undermines confidence in the outcome of the trial.'"[74] "[I]ndividual errors which do not alone create constitutional error can, when combined, have a cumulative effect which does rise to the level of constitutional error."[75]

---

[70] United States v. Walker, 657 F.3d 160, 185 (3d Cir. 2011) cert. denied, 132 S. Ct. 1122 (2012) (quotation and citation omitted) (alteration in original); see also Strickler v. Greene, 527 U.S. 263, 281-82 (1999).

[71] United States v. Friedman, 658 F.3d 342, 357 (3d Cir. 2011) (quoting United States v. Bagley, 473 U.S. 667, 682 (1985)).

[72] Kyles v. Whitley, 514 U.S. 419, 434 (1995).

[73] Id. (quoting Bagley, 473 U.S. at 682).

[74] Id. (quoting Bagley, 473 U.S. at 678).

[75] Reid v. Vaughn, 109 F. App'x 500, 500 (3d Cir. 2004) (citing Kyles , 514 U.S. 419).

11

**B.** **Discussion**

**1.** **Perjured Testimony and Attributable Drug Quantity**

In both his Motion for a New Trial and his § 2255 Motion, Calhoun contends that testimony of Special Agent Hodnett is "perjured" in that it improperly suggested that Calhoun was involved in the February 3, 2005 buy involving two kilograms of cocaine. According to Calhoun, the Government relied on this testimony to attribute two additional kilograms to Calhoun, thereby increasing the drug quantity attributable to him to more than five kilograms. He asserts that the Government knew Hodnett's testimony was perjured and argues that the Government's failure to disclose that the testimony was perjured violated Brady.

Calhoun unsuccessfully disputed the drug quantity at trial and the jury found Calhoun guilty of conspiracy to distribute more than five kilograms of cocaine. This Court finds that there is ample evidence in the record to support this finding. When Calhoun was approached by law enforcement on January 2, 2006, he dropped a bag containing one kilogram of cocaine. A later search of his residence resulted in the seizure of an additional quantity of cocaine. Estevez testified that Calhoun purchased cocaine from him over a seven-month period at a rate of about one kilogram per month.[76] Furthermore, in a statement to officials, Calhoun himself corroborated Estevez's testimony, admitting that he purchased cocaine from Estevez monthly from July 2004 until January 2005 at a rate of about one kilogram per month. Thus, by Calhoun's own admission he purchased more than five kilograms of cocaine from Estevez.[77]

---

[76] Trial Tr. Day 2 at 18:11-19:3.

[77] See Doc. No. 355 at 4-6 (Order denying Calhoun's objections to the Presentence Report, including his contention that the drug quantity attributable to him was not in excess of five kilograms).

Calhoun argues that Hodnett's testimony falsely implied that Calhoun was involved in the February 3, 2005 buy and that the two kilograms found on that date are attributable to him.[78] However, Calhoun offers no facts to support his contention that the Government intentionally presented perjured testimony or that the testimony was, in fact, perjured.  Furthermore, the two kilograms from the February buy are not necessary to support a finding that the drug quantity attributable to Calhoun was in excess of five kilograms.

In short, Calhoun's perjured testimony accusation does not provide a basis for finding that a <u>Brady</u> violation occurred and does not warrant a new trial.

## 2.    Dismissal of Charges Against Co-Defendant David Gutierrez

On January 18, 2006, co-defendant David Gutierrez pled guilty to Count Seven of the Indictment, which charged him with possession of a firearm by a convicted felon.  He did so pursuant to a guilty plea agreement with the Government, which provided that at the time of sentencing the Government would move to dismiss Counts One and Eighteen of the Indictment, charging Gutierrez with conspiracy to distribute more than five kilograms of cocaine and with possession of a firearm in furtherance of a drug trafficking crime.[79]  At sentencing the Government moved to dismiss these counts in accordance with the agreement.

To the extent Calhoun argues that the Government failed to disclose evidence relating to the dismissal of co-defendant David Gutierrez, Calhoun has not shown, and the Court cannot find,

---

[78]   It appears that Calhoun is referring to Agent Hodnett's answer to the question, "Did [Calhoun] indicate how many times he purchased cocaine from Estevez in the period of the indictment, that is July of 2004 to February of 2005?" to which Hodnett responded, "He said he obtained approximately one kilogram per month from Estevez during that time period."  Trial Tr. Day 1 at 48:17-21.

[79]   Doc. No. 144; <u>see also</u> Gov't's Change of Plea Memorandum, Doc No. 139, Ex. A.

any reason that this "evidence" would have had a bearing on Calhoun's guilt or innocence.  That the conspiracy charges against Gutierrez were dismissed does not mitigate Calhoun's own admissions or the testimony of Estevez, which provided ample basis for the jury's finding that Calhoun was involved in a conspiracy to distribute more than five kilograms of cocaine. Furthermore, the record shows that the conspiracy charges were dismissed pursuant to the Gutierrez's guilty plea agreement with the Government.  Thus, there is no evidence to support a finding that the Government withheld evidence of dismissal in violation of Brady so as to warrant a new trial.

### 3.        Pretrial Detention/Right To Counsel

Calhoun also contends that he should be granted a new trial because his improper detention before trial prevented him from communicating with counsel.  According to Calhoun, this detention hindered his attorney's ability to prepare for trial effectively and therefore deprived him of his right to counsel.  He asserts that the Government was aware he was improperly detained, although he himself was not aware at the time, and that the Government's failure to disclose this evidence to him constitutes a Brady violation.  Calhoun's argument fails to provide a basis for relief for multiple reasons.

First, there is no evidence that Calhoun was improperly detained.  As summarized above, Calhoun's assertion that he was improperly detained has been the subject of two civil actions, both unsuccessful.  On February 24, 2006, one day after Calhoun's state sentence expired, Calhoun made a formal request to prison officials to "determine detainer or release."  He was thereafter informed by his counsel that he was being detained on a Pennsylvania State Parole

Board detainer, which was to remain in place until his federal charges were resolved.[80]

Second, in responding to Calhoun's *pro se* request to continue the trial and in renewing the request on Calhoun's behalf on the morning of trial, Calhoun's counsel represented to the Court that he was adequately prepared for trial. Accordingly, there is no evidence that a lack of preparation affected the proceedings.

To the extent Calhoun is dissatisfied with the performance of his counsel, the Court will address this dissatisfaction with respect to the ineffective assistance of counsel claims Calhoun submits in support of his § 2255 Motion.

### 4.   Conclusion With Respect To The Motion For A New Trial

In sum, Calhoun fails to present the Court with any basis to grant a new trial. What Calhoun submits as "newly discovered evidence" is merely Calhoun's opinion or speculation; these opinions are neither evidence nor material to the issues involved. There is no evidence that the Government withheld any evidence favorable to Calhoun, or that Calhoun was prejudiced by facts and circumstances of which he was not aware. Accordingly, the Court will deny Calhoun's Motion for a New Trial.

### IV. MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE

### A.   Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a prisoner serving a sentence in federal custody may petition the court which imposed the sentence to vacate,

---

[80]  See Calhoun, 2008 WL 5273613, at *2-3.

set aside, or correct the sentence by asserting that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."[81]  "Habeas corpus relief is generally available only to protect against a fundamental defect which inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure."[82]

**B.     Discussion**

Calhoun submits numerous arguments in support of his § 2255 Motion, many of which duplicate those submitted in support of his Motion for a New Trial.  His arguments fall into four categories: (1) those regarding the attributable drug quantity; (2) those regarding his pretrial detention; (3) his ineffective assistance of counsel claims; and (4) his cumulative error argument.  The Court will discuss each category of claims in turn.

**1.     Attributable Drug Quantity/Brady Claim**

Calhoun makes several arguments in support of his contention that the Government was aware of information and evidence showing that the drug quantity attributable to Calhoun was less than five kilograms.  While the Court recognizes that many of his arguments have been waived as

---

[81]  28 U.S.C. § 2255(a).

[82]  United States v. DeLuca, 889 F.2d 503, 506 (3d Cir. 1989).  Under ADEPA, a motion filed pursuant to § 2255 "is subject to a one-year time limitation that generally runs from 'the date on which the judgment of conviction becomes final.'"  Clay v. United States, 537 U.S. 522, 524 (2003) (citing 28 U.S.C. § 2255).  This one-year time limitation is not jurisdictional in nature and a defense based on the statute of limitations may be waived if the government fails to raise the issue.  United States v. Bendolph, 409 F.3d 155, 160 (3d Cir. 2005) (en banc).  Here, Calhoun's petition for writ of certiorari was denied by the Supreme Court on March 9, 2009.  The § 2255 Motion was filed less than a year later.  Thus, the Motion appears to be timely.  Moreover, the Government has not raised the issue and the Court declines to do so *sua sponte*.  See generally Bendolph, 409 F.3d at 157-58.

procedurally defaulted, the Court nevertheless has considered his arguments on their merits.  For

those reasons stated above with respect to the Motion for a New Trial, Calhoun's contentions

regarding the attributable drug quantity do not provide a basis for relief.  There is ample evidence

to support the jury's finding and the Court will not disturb the jury's verdict on this basis.

### 2.        Pretrial Detention

Again Calhoun contends that he was improperly detained before trial.  As the Court

explained above, Calhoun was not improperly detained.  His detention thus did not result in a

fundamental miscarriage of justice and does not provide a basis for vacating his sentence.

### 3.        Ineffective Assistance Of Counsel Claims

Ineffective assistance of counsel claims are evaluated pursuant to the two-pronged test

established by the Supreme Court in Strickland v. Washington.[83]  Under Strickland, counsel is

presumed to have acted reasonably and to have been effective unless a petitioner can demonstrate

(1) that counsel's performance was deficient and (2) that the deficient performance prejudiced

petitioner.[84]  Counsel's performance is only deficient when it is "outside the wide range of

professionally competent assistance."[85]  Prejudice occurs upon a showing that there is a reasonable

possibility that but for counsel's deficient performance the outcome of the underlying proceeding

would have been different.[86]  For example, "[a]n attorney cannot be ineffective for failing to raise

---

[83]  466 U.S. 668 (1984).

[84]  Id. at 687.

[85]  Id. at 690.

[86]  Lewis v. Horn, 581 F.3d 92, 106-07 (3d Cir. 2009).

a claim that lacks merit," because in such cases, the attorney's performance is not deficient, and would not have affected the outcome of the proceeding.[87]  Similarly, an ineffective assistance of counsel claim is not established upon the showing that an error had an effect on the proceedings; rather, a defendant must show that there is a reasonable probability that the outcome would have been different in the absence of such errors.[88]

Calhoun submits the following grounds in support of his argument that his trial counsel was ineffective: (1) counsel was inadequately prepared for trial; (2) counsel recommended that Calhoun plead guilty; (3) counsel failed to file a motion to suppress the kilogram of cocaine recovered from him at the time of his arrest; (4) counsel failed to object to the admission of one of Calhoun's statements at the time of his arrest; (5) counsel failed to introduce an unidentified report; (6) counsel failed to object to the sufficiency of evidence at sentencing; (7) counsel failed to elicit testimony about marijuana found on Calhoun at the time of his arrest; (8) counsel failed to develop a record of the trial judge's alleged absence from the bench; (9) counsel failed to convince the Government to file a motion for a downward departure; (10) counsel failed to ensure that Calhoun personally received the Government's response to a post-trial motion that was filed *pro se*; and (11) counsel failed to object to defendant's being in restraints during jury selection. The Court will address each argument in turn.

        *(a)*     *Lack of preparation*

Calhoun first makes a blanket assertion that his counsel was inadequately prepared for

---

[87] Singletary v. Blaine, 89 F. App'x 790, 794 (3d Cir. 2004) (citing Moore v. Deputy Comm'r of SCI-Huntingdon, 946 F.2d 236, 245 (3d Cir.1991)).

[88] Strickland,  466 U.S. at 694.

18

trial.  However, he fails to allege any specific error on the part of counsel that demonstrates lack of preparation sufficient to undermine confidence in the outcome of a trial.  After trial counsel was appointed, Judge Katz granted him an extension of time to prepare.  Review of the trial transcripts shows that counsel cross-examined witnesses and raised objections.  There is nothing in the record to suggest that counsel's performance was deficient because he lacked preparation, or that the guilty verdict was the result of poor lawyering by an unprepared attorney rather than a result of evidence of Calhoun's guilt.[89]

> (b)    *Counsel's recommendation that Calhoun enter a guilty plea agreement*

Calhoun next argues that counsel was ineffective for recommending that he enter a plea agreement with the Government.  Given the weight of the evidence against Calhoun, which was known to defense counsel prior to trial, and the fact that Calhoun faced a 20-year mandatory minimum if convicted, the Court cannot find that counsel's performance was deficient in advising his client to exercise perhaps his only option to receive significant sentencing relief.  In any event, Calhoun did not plead guilty, and therefore no prejudice resulted from counsel's recommendation.

> (c)    *Failure to file a motion to suppress cocaine seized at the time of Calhoun's arrest*

Calhoun argues that counsel was ineffective for failing to file a motion to suppress the kilogram of cocaine that Calhoun dropped upon being confronted by federal agents at the time of his arrest.  As the federal agents had probable cause to stop Calhoun based on wiretap and other

---

[89]   At trial, the Government presented: (1) wiretap evidence of Calhoun arranging a kilogram purchase of cocaine; (2) testimony that he was caught in possession of one kilogram of cocaine; and (3) Calhoun's own admission that he had purchased approximately one kilogram of cocaine per month from July 2004 until the time of his arrest in January 2005.

19

evidence,[90] and based on Calhoun's abandonment of the cocaine when he dropped the bag

containing it, such a motion would have been unsuccessful.[91]  It is well settled that there is no

reasonable expectation of privacy in abandoned property,[92] and that one who voluntarily abandons

---

[90]  The Government had wiretapped Estevez's cellular telephone and intercepted several calls which established that Calhoun was arranging to meet Estevez to purchase one kilogram of cocaine.  As a result, the Government was able to obtain an anticipatory search warrant for Calhoun's residence.

[91]  Before the start of trial, Judge Katz and Calhoun's trial counsel had the following exchange regarding Mr. Calhoun's desire to pursue a suppression motion and to preserve the suppression issue:

> MR. CANNON: And, also, Mr. Calhoun would like to raise a challenge to the admission of certain evidence that was seized, and if I may explicate on that just a moment.  There was a seizure of a kilo of cocaine from Mr. Calhoun's person on or about January 3rd, 2005.  That seizure, your Honor, was the result of wiretap evidence, with regard to conversations that had taken place involving Mr. Calhoun, involving Raul Estevez, the head of the drug organization, and also Mr. Risquet, allegedly and the government plans to introduce during the trial these conversations that dealt with the fact that Mr. Calhoun wished to buy a kilo of cocaine.  And, arrangements that were effectuated over the three days as to which day and what place this delivery would be made and where Mr. Calhoun would receive the evidence.

> So all of that was monitored by the government.  So that on the date when the delivery and the purchase was to be made, there was surveillance on Mr. Calhoun as well as the other parties, including Mr. Estevez as well as Mr. Risquet.  All of them were seen to arrive at the home on Ruscomb Street that Mr. Estevez maintained for the purpose of storing cocaine.

> When my client departed that premises, Your Honor, in his automobile and returned near to his home, upon exiting his automobile, he was approached by the agents, at which time he dropped the bag, which the government would allege was abandonment on his part of the drug evidence.  And, the agents, of course, at that time were approaching him with the idea of searching him because they had just heard conversations bearing on the delivery of the cocaine.

> So, I did not file a motion to suppress because I believe without question that the issue of abandonment and the probability or the probable cause for the stopping of Mr. Calhoun certainly was acknowledgment, overwhelmingly clear to me that it did not suffer from any constitutional infirmities.

> THE COURT: I agree.

> MR. CANNON: But, Mr. Calhoun has a different view of that.  He certainly wanted to preserve that issue and let the record just reflect that he wanted to raise that issue.

> THE COURT: I understand.

Trial Tr. Day 1 at 21-22.  See also Trial Tr. Day 1 at 83-84 (testimony of Special Agent Hodnett).

[92]  United States v. Fulani, 368 F.3d 351, 354 (3d Cir. 2004).

property lacks standing to contest its search or seizure.[93]  Counsel explained to the court that he did not wish to raise a suppression motion given the facts of this case and this well-settled law. Because Calhoun cannot show that a suppression motion would have proved successful, counsel's failure to file a motion does not suggest that he provided ineffective assistance to Calhoun.

(d)      *Failure to move to suppress Calhoun's statement at the time of his arrest*

Calhoun next argues that his counsel was ineffective for failing to move to suppress a statement Calhoun made when he was apprehended on January 2, 2005.  The record clearly established that he voluntarily told law enforcement officers that he had additional drugs inside his residence during a discussion about his possible cooperation.[94]  At the time he volunteered this information, Calhoun also provided valid consent to search his residence, which search revealed additional drugs that were admitted at trial.[95]  Calhoun does not dispute the legality of the search, for which there was also a warrant.  Accordingly, even if his statements had been suppressed, the drugs in his home were found pursuant to a valid search and were properly admitted.  Therefore, counsel's decision not to file a motion to suppress Calhoun's statements would not have affected the outcome of his trial or sentencing.

---

[93]  United States v. Thomas, 423 F. App'x 199, 204 (3d Cir. 2011).

[94]  See Trial Tr. Day 1 at 86-91.  "Confessions remain a proper element in law enforcement.  Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence. The fundamental import of the privilege while an individual is in custody is not whether he is allowed to talk to the police without the benefit of warnings and counsel, but whether he can be interrogated. . . . Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today."  Rhode Island v. Innis, 446 U.S. 291, 299-300 (1980) (quoting Miranda v. Arizona, 384 U.S. 436, 478 (1966)) (internal quotation marks omitted).

[95]  Trial Tr. Day 1 at 88:8-10.

(e)    *Failure to introduce a report*

Calhoun asserts that counsel was ineffective for failing to introduce a report prepared by Philadelphia Detective Charles Meissler in which Detective Meissler wrote that "a source" informed him that the total amount of cocaine Calhoun purchased from Estevez was "in the neighborhood of approximately four (4) kilograms."[96]  According to Calhoun, his counsel was ineffective because this report shows that the attributable drug quantity was less than five kilograms and, had the jury been aware of this fact, it could not have convicted him of conspiracy to distribute more than five kilograms of cocaine.

The Court finds that counsel's alleged failure to introduce this report does not provide a basis for finding ineffective assistance.  Calhoun's description of the contents of an alleged report, which has not been produced and does not appear of record, cannot support a finding of ineffective assistance.  This Court cannot even determine based on this record if such report would have been admissible at trial.  More importantly, as noted, there was significant evidence at trial, including Calhoun's own admissions, that the attributable drug quantity exceeded five kilograms.  No prejudice has been shown.

(f)    *Sentencing advocacy*

On September 14, 2005, the Government filed an Information Charging Prior Offense, regarding Calhoun's felony drug conviction in the Philadelphia County Court of Common Pleas.[97] At sentencing, the Government introduced evidence of this prior conviction and the prior

---

[96]  Def.'s Supplemental Mem., Doc. No. 456 at 21.

[97]  Doc. No. 355.

conviction was used to enhance Calhoun's sentence.[98]  While trial counsel conceded that the enhancement applied, Calhoun addressed the court at sentencing stating that he disputed the use of the prior conviction.[99]  In the § 2255 Motion, he asserts that trial counsel was ineffective for failing to object to the use of the conviction.  Although unclear, Defendant appears to challenge both the validity of the underlying conviction and the use of the conviction to enhance his sentence.  Neither challenge provides a basis for granting the § 2255 Motion.

To the extent Calhoun seeks to attack the validity of his underlying conviction, the Court lacks the authority to consider this attack.[100]  However, the Court has the authority to consider his argument to the extent he seeks to challenge the use of the prior conviction to enhance his sentence.  A counseled plea of *nolo contendere* is included as a prior conviction under 21 U.S.C. § 851.[101]  Therefore, the use of Calhoun's prior *nolo contendere* plea to enhance his sentence was proper and counsel was not ineffective for failing to object to this enhancement.

(g)     *Failure to elicit testimony about marijuana*

Calhoun argues that counsel was ineffective for failing to elicit testimony that at the time of his arrest he was in possession of marijuana in addition to cocaine.  He proffers that the

---

[98]  Sentencing Transcript 8/11/06, at 3-4.

[99]  Sentencing Tr. at 3.

[100]  United States v. Escobales, 218 F.3d 259, 261 (3d Cir. 2000) ("[A] district court, 'cannot entertain a constitutional challenge to the underlying convictions' unless (1) 'the statute under which the defendant is sentenced *explicitly* provides the right to attack collaterally prior convictions used to enhance the sentence;' or (2) the constitutional challenge to the underlying conviction is based on a claim that 'the defendant's right to counsel has been denied.'  The defendant's remedy in such a case is to challenge the conviction in state court or to file a 28 U.S.C. § 2254 petition to attack collaterally the underlying state conviction.  Should either of these challenges prove successful, the defendant can then 'apply for reopening of any federal sentence enhanced by the state sentence.'") (citations omitted).

[101]  U.S. Sentencing Guideline § 4A1.2(a)(1); United States v. Meraz, 998 F.2d 182, 185 (3d Cir. 1993).

presence of marijuana in his bag potentially could negate the fact that he also possessed cocaine at the time.  However, the fact that he was carrying marijuana is plainly not material to his guilt or innocence in a case where he was charged with crimes related to a cocaine distribution conspiracy. Therefore, he has not been prejudiced by counsel's reasonable decision not to draw attention to the fact that he was in possession of a second illegal drug at the time of his apprehension.

> (h)     *Failure to address the judge's alleged absence from the bench*

Calhoun here repeats his argument from his direct appeal that the trial judge was absent from the bench during part of his trial.  As the Third Circuit held in its Opinion denying his appeal, Judge Katz never left the court room; he simply was momentarily out of Calhoun's view.[102]  This argument is without merit.

> (i)     *Failure to convince the Government to file a motion for a downward departure*

Calhoun asserts that trial counsel was ineffective for failing to convince the Government to file a motion for a downward departure at sentencing.  The Court disagrees.  Whether or not to file a departure motion is within the complete discretion of the Government.  Trial counsel here was not ineffective for failing to convince the Government to exercise this discretion and based on the facts of this case, any expectation that Calhoun would benefit from a downward departure motion would have been unreasonable.

> (j)     *Failure to argue that Calhoun was not personally served with the Government's response to his continuance motion*

Calhoun argues that counsel was ineffective for failing to ensure that the Government's

---

[102] Calhoun, 276 F. App'x at 118.

24

response to his *pro se* motion to continue the trial was delivered to him personally, rather than his counsel.  Where, as here, a reply brief is not submitted as a matter of right, and the Court properly considered his *pro se* continuance motion and denied it on the merits, the outcome was not affected by the service of the Government's response on counsel rather than Calhoun.  Therefore, defense counsel cannot be considered ineffective for failing to advance this meritless argument.

### (k)  *Jury selection restraints*

Finally, Calhoun argues that counsel was ineffective for failing to object to his being restrained during the preliminary stage of jury selection.  According to Calhoun, although he was permitted to attend the preliminary stage of jury selection, he was "paraded via U.S. Marshals escort in front of all potential jurors while handcuffed and in leg manacles."[103]  Calhoun asserts that before being escorted into the jury assembly room, he asked counsel to object to the use of restraints.  Calhoun asserts that counsel was ineffective for failing to raise this objection.[104]

The record is silent with respect to whether Calhoun attended the preliminary stage of jury selection and if so, whether he did so in shackles in the jury assembly room or whether he remained in the courtroom, observing through the use of the Eastern District of Pennsylvania's computerized jury panel selection procedure.  Before the Court can determine whether counsel was ineffective for failing to object to the use of shackles, the Court must determine if shackles were used and, if so, in what manner and for what reason.  If shackles were used, then the Court must also determine whether trial counsel objected to their use or otherwise expressed his concern

---

[103]  Def.'s Supplemental Mem. (Doc. No. 456) at 24.

[104]  Def.'s Supplemental Mem. (Doc. No. 456) at 24-27.

to the trial judge.  A hearing is necessary to determine the progression of events surrounding this issue and to fill in gaps where the record is silent.  The Court therefore will hold an evidentiary hearing at which any person having evidence of these events shall be present to testify or present evidence.  The Court will defer ruling on the merits of Calhoun's shackles argument until after a hearing.[105]

### 4.   <u>Conclusion With Respect To The § 2255 Motion</u>[106]

The Court has considered each of Calhoun's arguments in his § 2255 Motion and finds that, with the exception of his argument regarding the use of shackles during jury selection, which requires further factual development by the Court, each lacks merit.  Accordingly, the Court will reserve ruling on the Motion with respect to the use of shackles, but will deny the Motion in all other respects.

---

[105]  The preliminary stage of jury selection involves a process of randomly selecting prospective jurors from the jury pool to produce a jury panel from which the jury is then selected.  Unlike *Voir Dire*, the preliminary stage of jury selection does not occur in the courtroom in the presence of the trial judge.  Rather, the jury panel is selected from the jury pool in the jury assembly room located on the second floor of the courthouse.  Because the process involves "nothing more than the technological equivalent of drawing names from a hat," the Third Circuit has held that a defendant does not have a constitutional right to be present during this process.  <u>United States v. Hicks</u>, 403 F. App'x 709, 711 (3d Cir. 2010).

However, it is well settled that "no person should be tried while shackled . . . except as a last resort."  <u>Illinois v. Allen</u>, 397 U.S. 337, 344 (1970).  Because shackling a defendant is highly prejudicial, implicating the presumption of innocence, a judge is required to "make a case specific and individualized assessment," before ordering that shackles be used.  <u>Hicks</u>, 403 F. App'x at 712 (quoting <u>United States v. Baker</u>, 432 F.3d 1189, 1244 (11th Cir. 2005)) (internal quotation marks omitted); <u>see also</u> <u>Deck v. Missouri</u>, 544 U.S. 622, 629 (2005).  Thus, while the Third Circuit has held that a defendant does not have a constitutional right to be present during the preliminary stage of jury selection and therefore, that a defendant's absence does not violate his due process rights, the Third Circuit has not addressed whether a defendant's presence during this preliminary stage in shackles does violate those rights.  If the Court finds that shackles were used in this case, the Court will be required to determine whether counsel was ineffective for failing to object to their use.

[106]  The Court notes that Calhoun argues that the cumulative effect of all errors cited in his § 2255 motion should void the fundamental fairness of his trial.  This argument fails because, as discussed above, the Court's scrutiny of his arguments reveals that only one potentially has merit.  Accordingly, there are no errors which accumulate to void the fundamental fairness of Calhoun's trial.

## V. Conclusion

For the forgoing reasons, the Motion for a New Trial will be denied.  As stated, the Court will deny the § 2255 Motion on all but one basis, and will defer ruling on that basis until after an evidentiary hearing on the issue of Calhoun being shackled during the preliminary stage of jury selection.

There are several other motions filed by Calhoun that remain pending at this time, most of which have been rendered moot by the Court's rulings herein.[107]  The Court will address all pending motions in the attached Order including those that have not been rendered moot by the Court's rulings.[108]

An appropriate Order follows.

---

[107]  See Doc. Nos. 422, 425, 426, 475.

[108]  See Doc. Nos. 473, 477.

27