IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | CRIMINAL ACTION NO. 05-363-6 |
| v. : | |
| : | CIVIL ACTION NO. 10-986 |
| DAVID CALHOUN, : | |
| Defendant. : | |

## MEMORANDUM OPINION

RUFE, J.  FEBRUARY 28, 2013

By Opinion and Order dated June 28, 2012, the Court denied in part Defendant David Calhoun's Motion to Vacate, Set Aside or Correct his Sentence[1] and ordered a hearing to establish a factual record on one of Defendant's claims. Having established such a record, the Court now addresses the single issue that remains pending.

### I. PROCEDURAL BACKGROUND

The Court hereby incorporates the factual and procedural background contained in its June 28, 2012 Opinion in this case and recounts herein only those facts which have been established since that time and those necessary to provide context for its decision.

On April 20, 2006, a jury found Calhoun guilty of conspiracy to distribute more than five kilograms of cocaine, in violation of 21 U.S.C. § 846 (Count One); and possession with intent to distribute more than 500 grams of cocaine, in violation of 21 U.S.C. § 841(a)(1) (Count Thirteen). On August 11, 2006, Calhoun was sentenced to 20 years of imprisonment, followed by 10 years of supervised release, and was ordered to pay a special assessment of $200.[2]

---

[1] Doc. No. 439.

[2] Doc. No. 354.

Calhoun's timely filed August 17, 2006 appeal was denied by the Third Circuit on May 1, 2008.[3] The Third Circuit thereafter denied Calhoun's petition for rehearing *en banc* on October 22, 2008.[4] On March 9, 2009, the United States Supreme Court denied Calhoun's petition for writ of certiorari.

On April 20, 2009, Calhoun filed a *pro se* Motion for a New Trial pursuant to Federal Rule of Criminal Procedure 33 in this Court, based on what he asserted was newly discovered evidence.[5] On March 8, 2010, he filed a Motion to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. § 2255.[6] By Opinion and Order dated June 28, 2012, the Court denied Defendant Calhoun's Motion for a New Trial in whole and his Motion to Vacate, Set Aside or Correct his Sentence pursuant to 28 U.S.C. § 2255 in part.[7] The Court reserved ruling on the § 2255 Motion with respect to Calhoun's argument that trial counsel was ineffective for failing to object to his being shackled during the preliminary stage of jury selection. Because the trial record was silent on the issue, the Court held that before it could determine whether counsel was ineffective for failing to object to the use of shackles, it was necessary to determine whether shackles were used and, if so, in what manner and for what reason, and whether trial counsel objected to the use of shackles or otherwise expressed his concern to the trial judge.[8]

Accordingly, the Court deferred ruling on the § 2255 Motion on this issue only and appointed counsel to represented Calhoun at an evidentiary hearing. After providing appointed

---

[3] Doc. No. 389, United States v. Calhoun, 276 F. App'x 114 (3d Cir. 2008).

[4] Petition for Rehearing, No. 06-3794 (3d Cir. Oct. 22, 2008).

[5] Doc. No. 403.

[6] Doc. No. 439.

[7] Doc. Nos. 486, 487.

[8] This case was tried before the late Honorable Marvin Katz, and was reassigned to this Court on July 31, 2008.

counsel time to prepare, the Court scheduled the hearing. Before the hearing, appointed counsel briefed the shackling issue and filed a Motion for Partial Reconsideration of the June 28, 2012 Opinion.[9] On October 3, 2012, the Court held an evidentiary hearing at which evidence regarding the use of shackles was presented and the Court received limited evidence as to the issues raised in the Motion for Partial Reconsideration. Following the hearing, the Court permitted the parties to file supplemental briefing. The Government's supplemental brief having been filed on February 11, 2013, this matter is now ripe for disposition.

## II. FACTUAL FINDINGS

Based on the evidence presented at the hearing, the Court finds the following facts. The preliminary stage of jury selection involves a process of randomly selecting prospective jurors from the jury pool to produce a jury panel from which the jury is then selected. Unlike *voir dire*, the preliminary stage of jury selection does not occur in the courtroom in the presence of the trial judge. Instead, the jury panel is randomly selected by clerical staff from the jury pool in the jury assembly room located on the second floor of the courthouse. Because the jury assembly room is a large public area with several exits, bringing a criminal defendant who is in custody to this area poses a potential security risk. For this reason, it is the United States Marshall Service's policy that prisoners who wish to be present for the preliminary selection process be "restrained with leg irons, a waist chain and handcuffs," and that they be accompanied by several U.S. Marshalls.[10]

---

[9] Doc. No. 525.

[10] 10/3/12 Hr'g Tr. 54.

The trial in this case began on April 17, 2006, at which time Calhoun was in custody.[11] At the hearing, though Calhoun's trial counsel, William T. Cannon, did not have a clear recollection of the jury selection process, he recalled that Calhoun requested to be present during the preliminary stage of jury selection, that he advised his client not to do so, and that, in the end, Calhoun "chose to attend the calling of the panel in shackles . . . in the company of United States Marshals."[12] There is no dispute that the jury was selected from among the individuals who were present as part of the jury pool in the jury assembly room where Calhoun was brought in shackles.[13]

Trial counsel failed to object to Calhoun's being shackled in front of the jury pool. At the October 3 hearing, Cannon stated that he "would not have" raised an objection to Calhoun's being shackled because the trial judge would have denied any request to allow Calhoun to attend the preliminary stage of jury selection unrestrained.[14] He explained:

> [I]t's very rare when the district court will ask the marshal service to make an exception to their ordinary security rules. Someone who is in custody is not going to be permitted to travel in the thoroughfares of this courthouse without handcuffs.
> The jury pool room where defendants and their attorneys observe the selection of the panel for the courtroom is a very large room. Frequently there are as many as 200 people down there. There are several entrances and exits in that room.

---

[11] See Trial Transcript 4/17/06, Day 1 (Doc. No. 485). To the extent Calhoun argues he was improperly held in federal custody on an expired state detainer at the time of trial and that but for this improper detention he would have been able to attend the preliminary stage of jury selection without shackles, the Court finds that whether Calhoun was properly detained does not alter its finding on the motion. The Court's analysis, set forth herein, would be no different if Calhoun were improperly detained. The Third Circuit's ruling concerning the expiration of Calhoun's state detainer do not change the conclusion in this case. See Third Circuit's December 20, 2012 Opinion in Calhoun v. Murray, No. 09-2968.

[12] Doc. No. 548, Ex. A; see also 10/3/12 Hr'g Tr. 24.

[13] 10/3/12 Hr'g Tr. 26.

[14] 10/3/12 Hr'g Tr. 27-28.

4

> It is not difficult for someone who is unhandcuffed to break away from the marshals and to mix himself in with the multitude of people down there. The opportunity to leave the courthouse by the several exits that are down there, is also a possibility.
> David is a big guy. So, you know, he was a physical presence that I couldn't imagine the Marshal Service ever permitting him to travel downstairs without handcuffs and I could never imagine a district court judge telling the Marshal Service to take his handcuffs off for exposure to the jury panel.[15]

Trial counsel testified that he did not have a strategic reason for not raising the issue to the trial judge and he was not thinking about preserving the issue for appeal at the time; rather, he did not object simply because there was a "zero chance" that the trial judge would have granted a request to have the shackles removed.[16] He testified: "If [Calhoun] asked me to ask the judge to remove his shackles, I would have told him why I was not going to do that."[17] Counsel for the Government, the same government counsel at trial, did not remember defense counsel raising an objection and none appear in the trial transcript.[18]

## III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a prisoner serving a sentence in federal custody may petition the court which imposed the sentence to vacate, set aside, or correct the sentence by asserting that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."[19] "Habeas corpus relief is generally available only to protect against a fundamental defect which inherently results in a complete miscarrage of justice

---

[15] Id.

[16] 10/3/12 Hr'g Tr. 28-29, 45.

[17] 10/3/12 Hr'g Tr. 28.

[18] Doc. No. 548 at 3 n.2.

[19] 28 U.S.C. § 2255(a).

or an omission inconsistent with the rudimentary demands of fair procedure."[20] A motion to vacate, set aside, or correct sentence is a proper vehicle for a defendant's claim that his counsel ineffectiveness deprived him of his constitutional rights to a fair trial.[21]

Ineffective assistance of counsel claims are evaluated pursuant to the two-pronged test established by the Supreme Court in Strickland v. Washington.[22] Under Strickland, counsel is presumed to have acted reasonably and to have been effective unless a petitioner can demonstrate (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced petitioner.[23] Counsel's performance is only deficient when it is "outside the wide range of professionally competent assistance."[24] Prejudice occurs upon a showing that there is a reasonable possibility that but for counsel's deficient performance the outcome of the underlying proceeding would have been different.[25] For example, "[a]n attorney cannot be ineffective for failing to raise a claim that lacks merit," because in such cases, the attorney's performance is not deficient, and would not have affected the outcome of the proceeding.[26] Similarly, an ineffective assistance of counsel claim is not established upon the showing that an error had an effect on the proceedings; rather, a defendant must show that there is a reasonable probability that the outcome would have been different in the absence of such errors.[27]

---

[20] United States v. DeLuca, 889 F.2d 503, 506 (3d Cir. 1989).

[21] See United States v. Thorton, 327 F.3d 268, 271 (3d Cir. 2003).

[22] 466 U.S. 668 (1984).

[23] Id. at 687.

[24] Id. at 690.

[25] Lewis v. Horn, 581 F.3d 92, 106-07 (3d Cir. 2009).

[26] Singletary v. Blaine, 89 F. App'x 790, 794 (3d Cir. 2004) (citing Moore v. Deputy Comm'r of SCI-Huntingdon, 946 F.2d 236, 245 (3d Cir.1991)).

## IV.  DISCUSSION

The Court begins its analysis by framing the issue.  The Government asserts that "Defense counsel was not ineffective in advising the Defendant to waive his presence for the drawing of the jury panel in the second-floor jury assembly [room] and the Defendant suffered no prejudice by his appearance in the jury assembly room while in shackles."[28]  Calhoun, in contrast, presents the issue as whether: "Trial counsel's failure to object to Calhoun's appearance in shackles before the jury was constitutionally defective."[29]  Calhoun's statement of the issue properly frames the question presented in the § 2255 Motion and reserved by the Court in the June 28, 2012 Opinion.

If the issue were whether trial counsel was ineffective for advising Calhoun to waive his presence for the drawing of the jury panel, the Court could have easily denied this claim in its initial opinion on the Motion.  The Third Circuit recently held that a criminal defendant has no right to attend this preliminary stage of jury selection because his presence "would be useless, or the benefit but a shadow."[30]  Therefore, an attorney who advises a client not to attend this process, particularly when attendance would require that he be shackled, would be justified in giving this advice and his performance would not be ineffective.  Here, Calhoun opted to attend the preliminary selection notwithstanding his lawyer's sound advice.  Thus, counsel's ineffectiveness is evaluated on separate and subsequent grounds; that is, trial counsel's failure to raise, by objection or any other motion, the issue before the trial judge.  It is this failure which Calhoun has characterized as ineffective assistance of counsel.

---

[27] Strickland, 466 U.S. at 694.

[28] Doc. No. 548 at 1.

[29] Doc. No. 545 at 3.

[30] United States v. Hicks, 403 F. App'x 709, 711 (quoting Snyder v. Massachusetts, 291 U.S. 97, 106-07 (1934)) (internal quotation marks omitted).

7

### A. Trial Counsel Was Ineffective For Failing To Object To Calhoun Being Shackled In The Presence Of Prospective Jurors

"It is well-settled that shackling a defendant during trial is an extraordinary measure; 'no person should be tried while shackled . . . except as a last resort.'"[31] "[T]he criminal process presumes that the defendant is innocent until proved guilty. Visible shackling undermines the presumption of innocence and the related fairness of the factfinding process. It suggests to the jury that the justice system itself sees a need to separate a defendant from the community at large."[32] The appearance of a defendant in shackles "almost inevitably implies to a jury, as a matter of common sense, that court authorities consider the offender a danger to the community. . . . It also almost inevitably affects adversely the jury's perception of the character of the defendant."[33]

Because of these concerns, the Supreme Court has held that "the Fifth and Fourteenth Amendments prohibit the use of physical restraints visible to the jury absent a trial court determination, in the exercise of its discretion, that they are justified by a state interest specific to a particular trial. Such a determination may of course take into account the factors that courts have traditionally relied on in gauging potential security problems and the risk of escape at trial."[34] "Trial courts may not shackle defendants routinely, but only if there is particular reason to do so."[35] Further, because "shackling is 'inherently prejudicial' . . . where a court, without

---

[31] United States v. Brantley, 342 F. App'x 762, 767 (3d Cir. 2009) (quoting Illinois v. Allen, 397 U.S. 337, 344 (1970)).

[32] Deck v. Missouri, 544 U.S. 622, 630 (2005) (internal quotation marks and citations omitted).

[33] Id. at 633. Though the Supreme Court was speaking of a defendant's presence in shackles during the penalty phase of criminal proceedings, this rationale applies with equal if not greater force during the guilt phase of the proceedings.

[34] Id. at 629.

[35] Id. at 627.

8

adequate justification, orders the defendant to wear shackles that will be seen by the jury, the defendant need not demonstrate actual prejudice to make out a due process violation."[36]

The facts as established at the October 3, 2012 hearing show Calhoun was shackled and brought before the jury pool, which included the jurors who decided his guilt. The jury was thereby exposed to this inherent prejudice. Though counsel recognized that attending this preliminary stage of jury selection was unimportant and presumably recognized the prejudice of being seen by the jury in shackles as he advised Calhoun not to attend, he nevertheless failed to object to Calhoun being seen by the jury in shackles despite Calhoun's insistence that he raise an objection to the trial judge. It is the fact that counsel failed to preserve this issue or to give the trial judge the opportunity to minimize this prejudice that renders his performance ineffective.[37]

The Government repeatedly argues that any objection to the use of shackles would have been futile because the trial judge would have never allowed Calhoun to attend the drawing of the jury panel without shackles and the United States Marshalls would similarly have prevented this from happening. However, what the trial judge would or would not have done is of no consequence to counsel's obligation to his client. Trial counsel had an obligation to raise and preserve the issue with the Court.

---

[36] Id. at 635.

[37] Calhoun's failure to raise this issue to the trial judge does not operate as waiver of his argument, given that it was counsel's error that prevented the objection from being raised. In his papers, Calhoun asserts that he "declared to his counsel his desire to raise an objection to [his being shackled]." Doc. No. 456 at 24. At the hearing, trial counsel did not contest that Calhoun made this request; he stated that did not recall whether Calhoun made the request. However, trial counsel also testified: "If [Calhoun] asked me to ask the judge to remove his shackles, I would have told him why I was not going to do that." 10/3/12 Hr'g Tr. 28. Thus, the Court finds that trial counsel failed to raise the objection despite Calhoun's request that he do so, and therefore, that Calhoun did not waive this claim.

Additionally, "[i]n light of the Third Circuit's 'strong preference for reviewing allegations of ineffective assistance of counsel in collateral proceedings under 28 U.S.C. § 2255 rather than on direct appeal,' [Calhoun] did not waive this claim by failing to raise it on direct appeal." United States v. Oliver, 379 F. Supp. 2d 754, 759 (E.D. Pa. 2005) (quoting United States v. Sandini, 888 F.2d 300, 312 (3d Cir. 1989)).

Furthermore, while the Court cannot speculate as to what the trial judge would have done, precedent is clear that a district judge may not order that a defendant be shackled as a matter of routine, but rather must make specific findings about the need for their use.[38] The issue was never raised to the trial judge; thus, there was no opportunity for the judge to make appropriate findings, in the exercise of his discretion, that shackles were necessary and consistent with the Fifth and Fourteenth Amendment.[39] The trial judge had no opportunity to colloquy Calhoun about his presence at the preliminary stage of jury selection to ensure that Calhoun understood that the process is "the technological equivalent of drawing names from a hat" and that his presence "would be useless, or the benefit but a shadow."[40]

Additionally, by failing to raise Calhoun's objection to his being shackled, counsel deprived the trial judge of the opportunity to consider alternatives to shackling or other methods of minimizing the prejudice to Calhoun. For example, the trial judge could have directed that the selection of the panel of venire persons be conducted in the courtroom, outside the presence of any prospective juror, by the use of a computer, a method adopted by the Eastern District of Pennsylvania prior to the trial.[41] Or the trial judge could have directed the U.S. Marshall's service to ensure Calhoun's restraints were not visible to prospective jurors. The trial judge may have, after making an individualized assessment of the appropriateness of the use of shackles, determined that shackles were not necessary and permitted Calhoun to attend the preliminary

---

[38] Deck, 544 U.S. at 627.

[39] Id. at 629.

[40] Hicks, 403 F. App'x at 711 (quoting Synder v. Massachusetts, 291 U.S. 97, 106-07 (1934)) (internal quotation marks omitted).

[41] The Court takes judicial notice of this practice and notes that it is a method routinely utilized by judges in this Court and available as such a resource prior to the date of trial in this case.

stage of jury selection without shackles. Or the trial judge could have prevented Calhoun from attending the selection of the venire panel.[42]

Counsel's failure to bring this issue to the attention of the trial judge was deficient under the first prong of Strickland.

### B. Counsel's Ineffectiveness Caused Prejudice

As stated, shackling is "inherently prejudicial," and in the usual case, a defendant need not demonstrate prejudice to make out a due process violation.[43] However, because Calhoun raises his argument as an ineffective assistance of counsel claim, a finding of prejudice is required.[44] The Court finds that given the inherent prejudice associated with a jury seeing a defendant in shackles, there is adequate justification to support a finding that there is a reasonable probability that the outcome would have been different in the absence of such errors.[45]

The Court cannot accept the Government's assertion that the overwhelming evidence of guilt in this case outweighed any prejudice to Calhoun. The jury's first impression of Calhoun developed from seeing him in shackles and the inherent prejudice that resulted tainted the entire proceedings. While there is evidence in the trial record to support the jury's findings with respect to Calhoun's guilt, all evidence was considered by the jury after having seen Calhoun in shackles. The shackling of Calhoun, at the very outset of the proceedings, "undermine[d] the

---

[42] See Hicks, 403 F. App'x at 711.

[43] Id. at 635.

[44] Strickland, 466 U.S. at 687.

[45] Id. at 694.

presumption of innocence and the related fairness of the factfinding process" and this prejudice infected the entire proceedings which followed.[46]

Based on the foregoing, there is a reasonable probability that the outcome of this case would have been different in the absence of counsel error.[47] Accordingly, the Court finds that counsel was ineffective for failing to object to Calhoun's presence at jury selection in shackles and the prejudice to Calhoun warrants a new trial.

### C. Other Issues Raised By Defendant's Motion For Reconsideration

The other issues raised in Calhoun's Motion for Partial Reconsideration have essentially been rendered moot by the Court's granting the § 2255 Motion on other grounds. Consequently, the Court will deny the Motion and dismiss the arguments contained therein without prejudice at this time. To the extent these issues must be ruled upon during the disposition of Calhoun's criminal proceedings, they may be raised by motion at the appropriate time. The Court addresses the issues briefly.

#### 1. The Use Of Defendant's Prior Conviction To Enhance His Sentence

Whether the trial judge erred in using Calhoun's prior conviction to enhance his sentence is a question that can only be considered if Calhoun is again tried and convicted. A finding on this issue at this time is unnecessary.

#### 2. Calhoun's Right To Counsel Of Choice

Whether Calhoun was deprived of counsel of his choosing during his first trial is inconsequential, the Court having determined that he is entitled to a new trial. Calhoun claims that his retained attorney, Nino Tinari, Esquire, "filed" a motion to withdraw as counsel, which

---

[46] Deck v. Missouri, 544 U.S. 622, 630 (2005) (internal quotation marks and citations omitted).

[47] Strickland, 466 U.S. at 694.

does not appear on the record, that no hearing was held thereon, and that he was not even aware of the motion prior to the Court's ruling. However, Calhoun has not sufficiently supported his claim, since, as Calhoun recognizes in his brief, the record on this issue has not been fully developed.[48] In any event, the issue is moot in light of the decision herein.

### 3. Admission Of Calhoun's Statement To Law Enforcement

Whether Calhoun's statement to law enforcement should have been admitted at trial is an important issue that must be addressed before any new trial. However, it is moot with respect to the § 2255 Motion, which will be granted on other grounds.

## V. CONCLUSION

This Court's decision is not entered lightly, having previously found that the Government presented sufficient evidence to convict Calhoun of crimes beyond a reasonable doubt. It is of great concern that all possible and obvious precautions to preserve an accused's right to a fair trial were not pursued with vigor. Furthermore, the absence of the required record documenting compliance with court-adopted procedures, which were in place at the time of Calhoun's jury selection, and are designed to assure safety and security as well as an accused's due process right to a fair trial, deeply concerns the Court. Either no one noticed or cared; this is a situation that has not been explained and cannot be permitted to be characterized as harmless error.

For the foregoing reasons, the Court finds that Calhoun's trial counsel was ineffective for failing to object to Calhoun's being seen by prospective jurors in shackles. The Court will therefore grant his § 2255 Motion, vacate his sentence, and order a new trial.

An appropriate order follows.

---

[48] Doc. No. 545 at 8.

13